Joan Leakey and Justin Wallace for the Plaintiffs' Appellants. The National Repair Program at issue here is administered by the United States Department of State pursuant to the Fulbright-Hayes Act, which was promulgated to enable our federal government to increase mutual understanding between countries by means of an educational and cultural exchange. It therefore falls squarely into the foreign relations area. Secondarily, to accomplish that goal, the federal government created a special visa program, the J-1 visa, to allow young 18 to 26-year-old visitors to come to this country for one year, be incorporated into local families, and return to their countries as ambassadors for the United States, thereby also placing this into the immigration field, another squarely federal field. Can I ask you something? Has this type of statute been passed anywhere else in the United States? Yes, Your Honor. How many states? I cannot give you that answer. I can tell you that the statutes vary. In some states such as New York, they expressly carve out au pairs. In other states, they do not. At the moment, there is one challenge of a similar statute pending in California, but way behind this one. There is also a class action that's in Colorado, which is referenced in the address briefs. That just concerns the FLSA, though? That is the antitrust in FLSA. It has nothing to do with the Massachusetts statute, nor, of course, does the California one. Here we are contending that the Massachusetts Domestic Workers Bill of Rights, which I'll just call the Massachusetts Act, is preempted by both field and conflict preemption, and that the district court, with all due respect, heard and holding otherwise. Her error was actually based on certain specific findings and holdings that also relate directly to the issue of conflict, both field and conflict preemption. Can I ask you another question? Yes, of course. Is there any evidence in the record that the statute has affected in any way the federal program? The statute has not been implemented yet as to the federal program, Your Honor. There is a standstill agreement, so it is not at this point being applied at all in Massachusetts to the au pair program. And we have no indication what the State Department's view of this is, correct? I'm going to say two things, Your Honor. First, we really hope that you will ask the State Department what their view is, since we have had some difficulty in our own efforts to obtain a response to that question. That has left us in the position of having to rely on their regular communications, which in fact are very supportive of the position we take as to the purpose of the statute being a cultural issue. But suppose we were to consider the prospect of asking the State Department for its views. That's a very broad statement. What specifically would we be asking the State Department for its views on? You know, there's a question. The State Department can't, in the end, I think, resolve the purely legal issue of preemption for us, although their views might be very useful. So can you break it down a bit, please? Yes, Your Honor. What we have been hoping to find out from the State Department is whether they would confirm that as the enabling agency for Congress, that congressional intent is implemented by them, is to create a cultural exchange program, not a work program. There is obviously a child care services component here. That does not convert a cultural exchange program into a work program. You need the State Department. If the State Department said the stipend is a floor, not a ceiling, what would that do to your case? For certainly large chunks of what we are asking for, it would defeat our case. So the question is, did the State Department promulgating these regs need to impose a ceiling or just a floor? The ceiling and floor would apply to the minimum wage issue. There are other issues. Reporting applies to every issue. All that is at stake here is whether the State is imposing more requirements than the feds themselves require. I have no problem with you asking the State Department and hope that the court will, whether they intended all of their regulations to be a minimum or to be the maximum preempting the field. Here is the thing. What this to me reveals is that textually there is at least some ambiguity as to what the answer would be. We do not believe there is an ambiguity, Your Honor, but obviously the district court differed with us. Again, we believe on an erroneous basis, which I would like to come to. So another way to ask is that your position is the text of the regs is clear that it is a cultural exchange program, not a work program, and therefore every requirement they set forth is a ceiling, not a floor. If I can just amend that a little bit. I think the question actually would need to exclude those families that choose voluntarily to provide more funding or to provide other things. This really is a question of whether State law, if you will sort of accept that we are fine with that. Yeah, well, just as a ceiling as a legal matter. In other words, with respect to legal obligations. One has to be careful, Your Honor, because the fact of the matter is that the sponsors don't contend that host families are not free to do more than is provided in the regulations. What they contend, and remember that we have both sponsors and host families involved here, is that they cannot be legally obligated by a State or municipality to do more. In that sense, your view is that every provision in the reg is clear that it meant to impose a ceiling on legal obligations. A ceiling on legal obligations, and I appreciate the clarification. Certainly the host families can do more if they wish. One thing the Attorney General argues is that when there was the reference to the Fair Labor Standards Act, that inherent in the Fair Labor Standards Act is what you call the Savings Clause, and through that there is an expression of intent by the State Department to incorporate state minimum wage and other domestic worker protection laws. I would think that that is one of the textual ambiguities that the State Department might have to address in answering any question. We believe, as argued in our brief, that it is not ambiguous, but you are absolutely correct, Your Honor, that the State Department could perhaps agree with us and offer their forces serious guidance. The District Court's ruling and the Attorney General's argument are based on the assumption that the Savings Clause, and we are not the only ones who call it that, that is what it is generally referred to in the FLSA, incorporates state law. This Court decided back in 1986 that that was not the case. In 1986, in Cosme Nieves v. Deschler, where the Court said it is a Savings Clause, it says that if you are an employer and you are sued under state or municipal codes for not paying their wages, you can't defend on the basis of compliance with us, you are on your own. It doesn't say we incorporate state law. This Court has already said it does not incorporate state law, and that was the District Court's error. She read that as incorporating state law, and then read the regs, regulations, as incorporating state law. But see, there are three possibilities. The regs could be expressed in ousting state law, the regs could be expressed in incorporating state law, or the regs could be silent as to state law. But, Your Honor, you have to take the context of the whole statute, because the au pair program, or I should say the regulations under the statute, the au pair program isn't alone on either side of it. The regulations specifically provide for, in the case of student work travel, that they are to be paid the higher of federal, state, or local minimum wage. And then after that, for camp counselors and teachers, that they are to be paid on the same basis as their American counterpart. But what is the first law? See, the thing is about those provisions, they would be applying to all kinds of employers that were subject to state minimum wage laws. When was the first, this is to Judge Toroya's question, do we know when the first law that any state passed that would apply to a domestic worker like an au pair worker? Well, there are domestic workers' bills all over the country, but they are written in a way that does not appear to include au pairs. So there would have been no need in the regs to contemplate that until quite recently. Well, I wouldn't think that's accurate, Your Honor. Why? Respectfully, back in 2005 in the regulations, the Department of State acknowledges that they've consulted Department of Labor, and Labor has said to them they are employees of the host families, the au pairs, and therefore they're subject to the FLSA. In 2007, the language was added just to make clear that federal minimum wage had to be paid. When is the first state law that would have imposed an overtime or minimum wage requirement on an au pair passed? In this cultural program. To my knowledge, the only challenges have been in California and Massachusetts. I can only infer from that that other states had not taken the position yet. So that's roughly 2015 or something. 2014 was the passage here. So it's hard to deduce from the fact that the regs don't address an issue which hadn't arisen when those other provisions were dealing with employers who clearly were subject to state and local minimum wage laws because they applied to all employers. This is a very unusual type of employer who's usually exempt from any obligation under state law until quite recently. Well, I don't know that they were exempt. No one tried to make the argument until very recently under domestic workers' laws. No, there weren't any domestic workers' laws that applied to them. When was the first one that applied to a domestic... When was the first domestic worker law even passed? Do we know? I can't give you that answer, but there have been domestic workers' laws for a while, Your Honor, but it's not until California and Massachusetts. Before 2007? I do not know the answer to that question. But see, that's what's just... It's quite possible to read this as the State Department's just silent on the issue. They hadn't anticipated it. I don't treat them as silent when they write three regs in a row and say in the first one as to summer work travel, you will be paid the higher of state, federal, or local. And the two down, they say as to camp counselors and then as to teachers, you will be paid in accord with your American counterparts. But it doesn't make much sense to write a reg saying that as to au pairs in 1980 if there was no state law that would have applied to an au pair. But these regulations weren't written in 1980. The regulations were written in 94, 95, 97... Was there any state law that would have applied to an au pair in 94, 95? Or 2007? Was there? Do I know the answer if there was a domestic workers' bill anywhere in the country? I can tell you that I would infer yes. I cannot give you an affirmative answer because I did not survey the country. But I can say this. If you know enough to be saying in the other two regulations that you've got to pay the higher of federal, local, or state and in the same list of regulations, you say only that payments must be made in conformance with the requirements of the FLSA and you know by then that the FLSA does not incorporate state law because this and other courts had already said so, then all you're doing is saying make sure you meet the federal minimum wage requirements subject to the appropriate credits. I will point out to the court that among the papers, among the issues you are going to be deciding is whether the court wrongly excluded an affidavit that came in after the initial filings in this case from Stanley Colvin, the Department of State individual who wrote the regulation, who talks about what was said. But on that issue, we have an abuse of discretion standard of review, don't we? You may have an abuse of discretion. You do have an abuse of standard review as opposed to the de novo preemption standard. But respectfully, Your Honor, to refuse to take an affidavit that didn't exist at the time of original filing and goes to the heart of the issue we now have, what that meant by the person who wrote it respectfully would be an abuse of discretion. I have two more questions with Judge Tourez. Of course. Thank you. The first is the presumption against preemption. What role do you think that would play here? That plays no role in cases that involve federal fields or fields of traditional federal interest. Suppose that we think the more serious issue is the conflict preemption. Does the presumption apply in conflict preemption cases? The presumption does not apply in cases in which in fact, that's the context in which the rule arises in Buckman, I believe. Even though it's talking about traditionally federal fields, I believe Buckman arises in the context of a conflict preemption claim where the court said, look, the presumption arises in any case where there is either concurrent jurisdictional jurisdiction or historic jurisdiction in the state. That's not the case here. In Buckman, they were regulating the federal agency directly, which is not true here. I understand that. Is there any case applying the Buckman rule when the regulation doesn't apply to the federal agency but simply actors who are regulated by the federal government? I suspect there is, but I can't give you that answer because I relied on Buckman. It may even be in our brief, Your Honor, but I took out the key cases and prepared to discuss them if you wish we can do a 28-J on that point. Do you have a case saying that Buckman presumption applies when you're not attempting to regulate the agency but you're trying to regulate simply a party who is regulated by an agency? That would be helpful to me. We will look into that and supplement. And to tell you that we found nothing or to tell you that we did find something. So my second question is a sort of Chevron-type question. Your case relies heavily on regs that were written before this problem came up and to the extent the regs need interpretation on what was said in the federal register. But you've also thrown in some other data about what the State Department meant in its communications to these host families and the like. The State has, as I understand it, not really argued the issue of the role of these not CFRs and not federal registers. But can we in fact look at that type of data and would we give any deference whatsoever to those statements? I believe we addressed this in the brief but the statements that you're referencing right now that are currently in the record are notices and guidances and they are entitled to be treated once set down from regulations. The notices and guidances about the formula and the stipend. Entitled to be treated as what? As Chevron deference as opposed to Skidmore? Well, I would say Chevron deference has its weaknesses, of course, but I would say yes, as Chevron deference. Even though it wasn't done through notice and comment? Even though it wasn't done through notice and comment. Well, some were, but the ones we're talking about are after notice and comment they send out the guidance to tell the folks how to apply what was the subject of the regulations and it is entitled to consideration. May I just go back to one point that you made clear to me and I should have referenced this to Judge Barron which is while domestic workers bills per se are relatively new the state minimum wages in this state was first go back 50, 60 years. But they have employer limits like how many employees you have to have. That's what is common to all of them and my understanding is that they don't apply necessarily to every individual employee and maybe that's wrong. I believe that would be incorrect and if you're talking about a state or local municipal wage I believe if you have an employee in that state or municipality in many instances you are subject here in fact what the domestic workers bill does is incorporate the minimum wage statute which already existed. Why did they pass it? Because it has a variety The wage was already required? The wage was already required to the extent we're talking about the wage and the credits those go back way before the 2007 regulations. Can I ask you one last question Just about rightness before you sit down As I understand some of your arguments with respect to conflict preemption are dependent on the burden that would arise from a particular amount that would have to be paid or particular reporting requirements that would have to be engaged in as opposed to other arguments that would suggest that just on its face there's a conflict With respect to those where you say well a particular employer might have to pay more than double That's dependent on them paying a certain amount of overtime etc. And the claim is it's a conflict because they won't participate in the program if they're so burdened That is one claim As to that type of claim that's in your brief and I don't say that's the whole of your brief How is that right? Because that would seem to depend on those types of arguments Very heavily on what the actual employment contract was between an employer and employee with respect to how much they were actually willing to pay If they're willing to pay a lot more as many host families are It seems hard to believe that the legal obligation to pay less than they were already willing to pay could create the kind of burden that would lead them not to participate in the program So I'm just wondering why there isn't a rightness issue with respect to that set of issues Well the determination of the amount owed for repairs is clear because you have to use an assumed 45 hour work week because that's what the Department of State says So you have to pay them for 45 hours If you apply the Domestic Workers Bill you'd have to give them 5 hours of overtime You can compute what they have to pay which is something like $445 as opposed to $195.75 What we don't know is what every domestic worker who is not an au pair is being paid Those who are paid for 45 hours a week would be in the same position as the au pairs Those who work fewer than 45 hours wouldn't The problem here of course is that you can't I'm an employer, I have an au pair The contract between the employer and the au pair says I'm going to pay you double the standard amount no matter what because I'm super generous Could that person bring a successful preemption claim against the enforcement of the minimum wage law? You might say they don't have standing because they aren't injured if they're willing to do it So that's why I'm just wondering what is the remedy you're trying to ask us for with respect to those sorts of claims since we can imagine claims that would fail from attempted enforcements of the We're asking on behalf of the host family which is a small part of what we're arguing about here that they not be put in a position of having to pay $445 a week which they would all have to pay A blanket statement of that kind Yes And you've got two plaintiffs in this case plus some affidavits that were rejected indicating and an amicus brief indicating that there are a substantial number of people who cannot afford that Again, that is only a small piece of this. We are actually talking here about preemption and again I do remind you the minimum wage goes back to at least the 1930s in Massachusetts and that was clear in 2007 when the court chose not to write in that it was lower state, federal, municipal minimum wage at that time even though they did it for three other categories On this rightness question has the state in defending this case ever said that there was a rightness issue here? No Thank you Mr. Toole, good morning Good morning Judge Duran May it please the court There's nothing that plaintiffs can point to in the laws and regulations governing the OPERA program that show the slightest interest by Congress in preempting state worker protection laws There's no reference to state worker protections in the 1961 Fulbright-Hays Act In 1995 U.S. Information Agency and the Department of Labor determined that OPERAs are employees protected by labor and employment laws Since 1997, State Department regulations have clearly provided that OPERAs must be paid in conformance with requirements of the Fair Labor Standards Act as interpreted by the Department of Labor and that statute of course contemplates supplemental protections by state law And when Congress permanently authorized the OPERA program in 1997, it did so only after specifically requiring OPERA companies like Cultural Care to comply with those same regulations There's therefore no basis to find that federal law preempts the domestic workers law here in Massachusetts Now, the plaintiffs have argued that the domestic workers law is an attempt to interfere in foreign policy or issue visas in the name of the Commonwealth, but that's of course not true It's an effort to protect a broad class of highly vulnerable workers here in Massachusetts, only a subset of whom are OPERAs And the Supreme Court has told us that when we look at preemption it's critical to look at the target at which the state law aims If a state law is one of general applicability and aims at a traditional subject of state regulations, it's not preempted. Here the domestic workers law applies generally It covers all domestic workers in Massachusetts regardless of their nationality or immigration status Mr. Toon To get to some of the questions that we've been discussing Judge Barron has suggested that the State Department has not fully faced up to questions such as the one presented here, because it's a relatively new question and one could debate whether it's a new question or not, but let's assume that that's the case Would the state have any objection to us asking the State Department to consider this situation and file a brief with this court I will tell you that there's precedent for us doing this Ironically, I did it years ago in a case from Western Massachusetts involving police overtime The union said they were entitled to it The town said no, they weren't We heard argument and then we asked the Department of Labor and they said oh yes, the unions are correct They're entitled to overtime at which point the case disappeared and we didn't have to write an opinion So it's not that it's unprecedented for us to do this Judge Lynch, I certainly wouldn't dispute that the court has the authority to do that, but we would encourage it not to because what matters for preemption is the intent of Congress That's what the Supreme Court said in Wyeth and Medtronic not the shifting policy views of a different agency administrator and the fact is that the current regulations I'm sorry You're wandering into Chevron territory the fact that there are different administrations and they take different policy positions as long as they can explain the changes in the policy positions I don't know what policy position or legal position this administration would take Are you saying the answer is so obvious that we really shouldn't ask them their views We think that first of all, it's the burden of the plaintiffs to establish a clear and manifest purpose by Congress They have no objection to us asking I'm asking you Yes, we reject we object to it, Your Honor, specifically because we don't think it's necessary to resolve this case What about if the State Department says these regulations are going to interfere with our full-blown program because they're going to make it more difficult for us to place repairs. Would that have anything to do with this case? Well, you know, I guess there's a lot of different ways the State Department could answer Well, I'm letting you answer the way I said Right, I think there would still be a question as to whether given the legislative history that I've discussed including the fact that Congress permanently authorized the program only after requiring compliance with the recognition of au pairs as employees We think there would be a serious question if the State Department would say no, you actually shouldn't treat au pairs as employees That's not the way we see it Okay, they're employees for purposes of federal law The question is whether for purposes of state law the answer is so clear Well, again the burden is on the plaintiffs who brought this lawsuit Let me come at it this way If suppose they promulgate new regs the State Department and the new regs say all of these rules about what you have to pay au pairs and what the reporting requirements are for au pairs are ceilings as to legal obligations Would you agree that those would then preempt state law? We wouldn't obviously want to take a close look at what any They said what I said We think there would be a question as to the validity of that position Because you question whether they have the authority under the federal statute to oust those state laws It's clear that they can oust some state laws Because they have a rule now that says you have to be between 18 and 26 I assume you can't sue under state law saying that's age discrimination I think in that case there would be a question of specific conflict preemption That's because they made it clear So if instead they make it clear by saying all of our rules about the stipend you have to pay are ceilings on legal obligation that would be equally clear in creating a conflict with imposing a different obligation To do that I think you'd have to promulgate new regulations So then next question They haven't promulgated the new regs We have the regs we have saying what they say If the agency now comes in and simply says those would create a conflict As I understand what you're saying is we don't defer that That's not worth anything You can't just come and say But suppose they say the right understanding of these regs is that they create a ceiling on legal obligations That's what they were always intended to mean That's what they always said Wouldn't we defer to that interpretation of the regs because it's just our deference to an interpretation of a reg Well I think there's a big question as to whether our deference can ever have preemptive effect and so we'd want to litigate that issue But the bottom line is we don't think these regulations even support that interpretation They're completely silent as to state law except that they say that the FLSA applies Okay But that's all just to So your reason for saying you don't want to hear from the State Department is because in light of your views about the deference we would accord, any interpretation they could give of regs written this way is such that we wouldn't defer to it so there's no reason to receive it That's certainly a good way of putting it Of course all of that's hypothetical because we don't yet know whether they would say that We don't and I suppose if they came back and said you know what, they don't preempt you'd have no problem with that I suppose not I just think it's unnecessary We'd like to get our law in place we have been holding it in advance pending this lawsuit and we don't want to wait another year to sort of play this out and from what I read in the news reports the current State Department would like to shut down the program altogether so I don't think there's any reason to think they're going to reach out to give special protections from state law Well maybe we've been reading different news reports but would the state if we were to decide to ask the State Department for its views and specify would the state continue the standstill agreement I'm not in charge of enforcement, I have to go back and talk to my colleagues about that. We have up to now had an informal agreement with cultural care that we would not seek enforcement actions until this appeal was resolved but I think that's something I'd have to discuss later When this problem or this issue of potential conflict arose what is the state's view of when cultural care started to be subject to state and local obligations akin to the ones that are now being imposed by the Massachusetts statute Well my understanding is that they've always been protected by the state minimum wage law which has been on the books since 1918 And that applies to even a household employee who's a live-in domestic worker? Yes, I'm not 100% confident I don't believe there's any limitation on number of employees And it applies even to live-in domestic workers? I'm sorry? It applies even to live-in domestic workers? I think so, yes. My colleague here is the ex-government of matters but that's my understanding So if that's the case, what do you make of the fact that there is an odd absence of any evidence that any one of those state minimum wage laws has ever been attempted to be enforced with respect to an au pair and no evidence the state department has ever taken any action against a sponsor for not complying with it and that all of the noises coming out of the state department about what you have to do as a host family is simply comply with the federal standard Well, your honor I think you have to take notice of the litigation that's going on in Colorado a nationwide class action on behalf of all au pairs that raises both federal and state minimum wage laws and the district court has allowed those claims to proceed, finding that there is a good argument that state minimum wage laws apply So that's not Massachusetts law as an issue with that case, but other state laws are There's a state law claim in Colorado? Yes, that's my understanding There's both federal and state law And the district court held it was not preempted Yes, yes And this is the Beltran case There is a magistrate judge ruling and a district judge ruling That case is pending and who knows how it's going to play out but those cases are very much alive and I believe they go back for au pairs for the past six years So this issue is developing I think there's more consciousness of the rights of au pairs and I think states are addressing these issues in various ways and I just don't know whether or not individual minimum wage law claims have been brought by private parties under Massachusetts law That sort of suggests the wisdom of getting the state department to say something about all of this Has there been any effort in the Beltran case to do that? I don't know, Your Honor I don't know to the extent that they've tried to bring the state department into that litigation On the issue of rightness, Your Honor We haven't argued rightness Well, we have argued that Okay, sure I mean, Beltran is what, 2015 or 16? I think it was followed So the program began in 1961 No, it applied It began in the late In the 80s, I believe Okay, so that's 30 years before we got to Beltran And for 30 years, your position is that there were state minimum wage laws in place that protected these very workers and yet the state department was running this program or USAA was running this program without any reference to those laws ever appearing in anything that they ever said no evidence of any lawsuits even though there was no compliance no evidence of any enforcement actions I mean, all of that does suggest that there was an understanding that the federal wage was the stipend, period Well, if it doesn't suggest that, why doesn't it? There's no reference to stipend in any applicable regulation or law That term simply doesn't exist Forget the word stipend There's no indication that there was any state legal obligation that the state department was giving anybody any notice of that they had to follow Even though your position was there was such a state obligation all those decades Right, well the minimum wage applies broadly to household employees I can't tell you whether or not anyone brought individual claims It's very hard for someone from abroad to pursue his or her rights Why in the camp and travel regs do they mention the state domestic the state wage obligations but they don't mention them in the regs under the au pair program Oh, I'm sorry, what regulations? The regulations that your opponent points to, which is with respect to the summer travel regs and the camp regs, those specifically say you have to pay the higher of the federal or the state wage Why wasn't that same provision included in the USIA regs for the au pair programs if, as you say that was their intention that it would apply Your Honor, there are several regulations that apply to exchange For instance, 22 CFR 6231 No, I'm sorry, a different provision that says any exchange visitor program with a with an employment component that the officers of the program must have a detailed knowledge of federal, state, and local laws pertaining to employment Just answer my question There are provisions in the summer travel and summer camp regs for visa programs for people coming abroad to work here that the employer of those persons has to pay the higher of the state or the federal wage And under the USIA regs and the state department regs, there is no such provision. Why not? Who knows why particular regulations are more specific on particular issues than others The point is that the generally applicable regulations to all exchange visitor programs with work components specify that You have to be aware of state and local employment laws The Wilberforce pamphlet May I ask a question? Massachusetts is a high wage high cost of living state For how many years has the Massachusetts minimum wage been above the federal minimum wage? I can't answer that I know it's been more than a decade It's been a long period That's because the federal wage has stalled out for a long time as well So now we are at 11 and the federal wage is $7.25 So there has probably been a gap for some time Thank you Thank you First, the purpose of the Fulbright-Hays Act and all the programs promulgated under it is set forth in a section called Congressional Statement of Purpose Section 2451 There is no question what the purpose was It's too long for me to read It's a mutual understanding and I quoted part of it at the beginning of my comments That's the congressional purpose Second, these regulations eliminated what was in the Department of State's Federal Register and CFR comments, which is it's supposed to be a uniform national wage You can't have a uniform national wage if every state imposes their own And that's the error that Judge Tamwani made She, for some reason, found it was abandoned because of the 2007 language that said the payment must be in conformance with the FLSA because she said the FLSA incorporates state law which this Court says it does not Third, Congress did not say expressly, to my knowledge anything whatsoever when it finally permanently authorized it had done 3 or 4 preliminaries in 2007 that it was doing so because of the fact that that phrase was added to the regulations. Indeed, back in 2005, the Department of State regulations already acknowledged that the Department of Labor said that these were employees of the host families In 2007, they just that they wanted it to be clear that this meant that federal minimum wage must be used subject to federally approved credits The room and board credit here which is inconsistent by a factor of 3 times with the state credit is from a DOL regulation that the Department of State specifically adopted Fourth, the Department of State audits annually and it has since 1999 it reviews exactly what the sponsors tell the host families they are to pay It has been aware from 1999 to the present and the USIA before it was comparably aware that the sponsors were informing the host families of the guidance issued by the Department of State In fact, the guidance usually said you're obligated to tell them they've got to pay this amount meaning at least this amount Therefore, I would suggest respectfully, we've had minimum wage I believe in Massachusetts It happened to be referenced in the paper this morning It goes back to the 1930s To my knowledge, it always exceeded any federal minimum wage There has never previously been an attempt to act here or elsewhere I believe 35 states have higher minimum wages than the federal government There has never been an effort until here and then more recently in California and in the Beltran case Now, I am counseled there If you have questions, I would be glad to answer them Is there a preemption ruling in the Beltran case at the 12B6 state? The court recently said that she feels that she has dealt with preemption adequately in her rulings to date Nothing is finalized, but she said she doesn't want to hear us argue preemption again There is, however, one court going the other way in Connecticut in one of the related programs that finds preemption and I believe we cite that in our brief So we've got the Beltran case which is predominantly an FLSA and antitrust case but does also have state claims for any of the states in which individual named plaintiffs served or provided child care services So she does say I shouldn't ever give her reasoning She just says she's not going to conclude that preemption applies For the Board of Appeals, right? Yes So that has not been tested and I would respectfully suggest many of these same issues would ultimately be presented but haven't been because there hasn't been a context in which to do that yet There's no Rule 54 separate judgment on preemption She could change her mind, but that's where it sits right now We are still at the tail end of discovery and the decertification of the class, period So we're at least a few months out from any trial in the case or any final judgment Some of the judgments have not been ruled on at this point Thank you